# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
### CIVIL CASE NO. 3:20-cv-00565-MR

ANTHONY L. HARRIS,                )
                                  )
            Plaintiff,            )
                                  )
vs.                               )
                                  )
RAVEN DAWN MAC, et al.,           )                    ORDER
                                  )
            Defendants.           )
_____  )

**THIS MATTER** is before the Court on initial review of the Complaint. [Doc. 1]. The Plaintiff is proceeding *in forma pauperis*. [Doc. 9].

The *pro se* Plaintiff filed the Complaint pursuant to 42 U.S.C. § 1983 addressing incidents that allegedly occurred at the Lanesboro and Polk Correctional Institutions.[1] [Doc. 1]. The Plaintiff names as Defendants: the North Carolina Department of Public Safety ("NCDPS"); FNU Abernathy, FNU Blackwell and Raven Dawn Mac, correctional sergeants at Lanesboro; FNU White a lieutenant at Lanesboro; FNU Andrews, FNU Carol, FNU Collins, FNU Jones, and John Does # 1 and 2, correctional officers at Lanesboro; FNU West a nurse at Lanesboro; FNU Ingram, a unit manager

_____

[1] The Plaintiff filed the Complaint from the Central Prison in Raleigh; he is presently incarcerated at Polk C.I.

at Lanesboro; FNU Lambert, an assistant unit manager at Lanesboro; Shane Tharrington, the NCDPS director of classification; Billy Cooper, a unit supervisor at Polk; FNU Walker, a unit manager at Polk; Johny Halkins, the warden at Polk; D. Dayes, a supervisor at Polk; and FNU Tucker, the "FCC" at Polk.

The Plaintiff alleges that, on July 4, 2018, while he was incarcerated at Lanesboro C.I., Defendant Collins "touched his butt" while she was escorting the Plaintiff to outside recreation. [Doc. 1 at 3]. The Plaintiff alleges that this incident led to a "dispute" between the Plaintiff and Collins. [Id.]. The Plaintiff alleges that Defendant Mac overheard the dispute, "jacked [Plaintiff] up," "coerced [him] to his cell," and denied him recreation. [Id.]. The Plaintiff alleges that Defendants Mac, Collins and Carol then beat him in his cell and sprayed his face and eyes with pepper spray. [Id.]. The Plaintiff alleges that he passed out and the officers left. [Id.].

The Plaintiff alleges that Defendants Blackwell, Jones, and "the rest of the crew" arrived and an unidentified officer pulled the Plaintiff's arm through the trap by one handcuff. [Doc 1 at 4]. The Plaintiff alleges that "the officers" yelled for the Plaintiff to "stop resisting" even though the Plaintiff was not resisting, to justify their assault, battery, and use of excessive force. [Id.]. The Plaintiff further alleges that "they" dragged the Plaintiff down a hall in full

restraints to medical while an unidentified officer repeatedly stepped on the foot restraints to cut into Plaintiff's ankles. [Id.].

The Plaintiff alleges that Officer Jones and three unidentified officers[2] beat the Plaintiff in a holding cell in the medical waiting area, and that one of the officers ground his privates into the Plaintiff's butt while the Plaintiff screamed. The Plaintiff then alleges that an unidentified officer stepped on the foot chains while the other two officers pulled Plaintiff away in the opposite direction so the restraints would cut into his ankles. [Id.].

The Plaintiff alleges that Nurse West watched the whole episode in the medical waiting area through the window, laughing. [Id.]. The Plaintiff alleges that once he was in the nurse station, West asked him whether he was hurt or had been maced. [Id.]. The Plaintiff answered "yes" and requested a "detox."[3] [Id.]. The Plaintiff alleges that Defendant West could observe swelling to the Plaintiff's head and his lip injuries, and could smell the pepper spray on him. [Id.]. The Plaintiff contends that Defendant White and other unidentified officers told Defendant West not to treat the Plaintiff and threatened him, telling him to say that nothing happened. [Doc. 1 at 8].

---

[2] The Plaintiff has named only two John Doe officers as Defendants.

[3] This refers to a decontamination shower to remove the pepper spray. [See Doc. 1 at 8].

The Plaintiff alleges that Defendant West refused to give the Plaintiff treatment or medical attention including a decontamination shower. [Id.].

Next, the Plaintiff alleges that "the officers" and Defendant White then took the Plaintiff to an empty cell where they slammed his head into a wall and beat him, injuring his ribcage and back. [Id.]. The Plaintiff alleges that he was then made to strip while the officers joked about his body. He further alleges that "they" then wrapped chains around the Plaintiff "like a rope, In a disgraceful and humiliating manner" which Defendant White made them redo. [Id.]. The Plaintiff alleges that his New Balance shoes were taken during this incident and were never returned. [Doc. 1 at 11]. He further alleges that "they" then tightened the restraints to cut into the Plaintiff's skin "and the nurse[4] acknowledged and accepted it." [Id. at 8].

The Plaintiff further alleges that "the officers" then took him back to the medical waiting area holding cell and tightened the restraints even more, cutting deep into his skin and cutting off the blood flow to his wrists and ankles, leaving scars. [Id.]. He contends that they made him walk barefoot down the hall while another officer kept stepping on the foot restraints on purpose to cut deeper into the Plaintiff's ankles and feet, causing unwarranted pain. [Id.].

---

[4] It is unclear whether this refers to Defendant West.

The Plaintiff alleges that Defendant Abernathy threw everything out of Plaintiff's cell, and damaged his property and "important documents" with water, mace, and lotion. [Id.]. He further alleges that Defendant Abernathy ordered that Plaintiff's mattress to be removed, and that he and Defendant Collins left him on the floor in full restraints until 8:00 p.m., when Plaintiff was found non-responsive on the floor. [Id. at 8, 12]. The Plaintiff alleges that no "code" was ever announced on the radio or intercom during this incident, and that Defendant Andrews was "in the booth." [Id. at 9]. The Plaintiff alleges that a few days later, Lieutenant Philemont[5] came to the Plaintiff's cell to write a statement, but "upon reasonable belief," such statement was never documented or filed. [Id.].

In addition to his claims of excessive force, the Plaintiff appears to allege a claim for tampering with his legal mail. The Plaintiff alleges that he sent legal mail to "NCIC"[6] on August 2, 2018, and that NCIC responded a few days later. [Id.]. The Plaintiff alleges that Defendant Herring delivered this legal mail opened with the letter stapled to the outside of the envelope. [Id.].

_____

[5] Lieutenant Philemont is not named as a Defendant.

[6] This appears to refer to the North Carolina Industrial Commission.

The Plaintiff contends that in retaliation for "all of the above" (presumably referring to his communication with the North Carolina Industrial Commission), Defendants Ingram, Lambert, and Tharrington sent the Plaintiff to Polk C.I.'s H-CON super-maximum unit without due process for over 310 days, even though the Plaintiff was not found guilty of any charge. [Id. at 8, 9, 12]. The Plaintiff alleges that the transfer caused him to lose his kitchen job; have no contact or visitation with his family for two years; and experience harsher conditions of confinement including no outside recreation, almost no human contact, all while suffering the effects of his bone marrow cancer. [Id. at 9].

The Plaintiff alleges that an additional 180 days in H-CON were recommended by "classification" at Polk under the supervision of Defendants Walker, Cooper, Tucker, Dayes, and Halkins. [Id. at 10].

As relief, the Petitioner seeks injunctive relief and compensatory and punitive damages. [Id. at 4].

**II.    STANDARD OF REVIEW**

Because Plaintiff is proceeding *in forma pauperis*, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who

is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); see 28 U.S.C. § 1915A (requiring frivolity review for prisoners' civil actions seeking redress from governmental entities, officers, or employees).

In its frivolity review, a court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). Furthermore, a *pro se* complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

## III. DISCUSSION

To state a claim under § 1983, a plaintiff must allege that he was "deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999).

### A. Parties

The Plaintiff attempts to name NCDPS as a Defendant. However, "neither a state nor its officials acting in their official capacities are 'persons'

under § 1983." <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58, 71 (1989). Therefore, NCDPS is not a "person" under § 1983. <u>See</u> <u>Fox v. Harwood</u>, 2009 WL 1117890, at *1 (W.D.N.C. April 24, 2009). The Plaintiff's claims against NCDPS are accordingly dismissed with prejudice.

The Plaintiff makes allegations against individuals who are not named as Defendants in the caption as required by Rule 10(a). Such claims are nullities and they are dismissed without prejudice. <u>See, e.g.</u>, <u>Londeree v. Crutchfield Corp.</u>, 68 F.Supp.2d 718 (W.D. Va. Sept. 29, 1999) (granting motion to dismiss for individuals who were not named as defendants in the compliant but who were served).

Further, the Plaintiff extensively relies on pronouns and vague terms such as "officers" and "crew," rather than identifying the individual(s) involved in each allegation. Such claims are too vague and conclusory to proceed and are dismissed without prejudice.

### B. Excessive Force & Sexual Abuse

The Plaintiff alleges that he was beaten and sexually assaulted by various officers.

The Eighth Amendment prohibits prison officials from unnecessarily and wantonly inflicting pain on prisoners. <u>Hill v. Crum</u>, 727 F.3d 312, 317 (4th Cir. 2013). "An inmate's Eighth Amendment excessive force claim

involves both an objective and a subjective component." Brooks v. Johnson, 924 F.3d 104, 112 (4th Cir. 2019). "The objective component asks whether the force applied was sufficiently serious to establish a cause of action." Id. The subjective component "ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Id. at 112-13. Allegations of sexual abuse by a prison guard can amount to an Eighth Amendment violation. Jackson v. Holley, 666 F. App'x 242, 244 (4th Cir. 2016); see Woodford v. Ngo, 548 U.S. 81, 118 (2006) (Stevens, J., dissenting) ("Accordingly, those inmates who are sexually assaulted by guards, or whose sexual assaults by other inmates are facilitated by guards, have suffered grave deprivations of their Eighth Amendment rights.").

The Fourth Circuit recognizes a cause of action for bystander liability "premised on a law officer's duty to uphold the law and protect the public from illegal acts, regardless of who commits them." Stevenson v. City of Seat Pleasant, Md., 743 F.3d 411, 416-17 (4th Cir. 2014) (quoting Randall v. Prince George's Cnty., 302 F.3d 188, 203 (4th Cir. 2002)). A "bystander officer" can be liable for his or her nonfeasance if he or she: "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a

reasonable opportunity to prevent the harm; and (3) chooses not to act."
Randall, 302 F.3d at 204.

Upon review of the Complaint, the Court concludes that the Plaintiff's allegations that Blackwell, Carol, Collins, Jones, Mac, White, and John Doe Officers 1 and 2 used excessive force and touched him in a sexual manner state plausible Eighth Amendment claims, and such claims therefore will be permitted to proceed.

Next, the Plaintiff alleges that Defendant West observed some of the foregoing actions through a window and laughed.  The Plaintiff has failed to state a plausible claim for failure to intervene against Defendant West because he does not allege that she was in a position to intervene, having observed the alleged use of excessive force from another room.

The Plaintiff further alleges that Defendant Andrews was "in the booth" at an unspecified time and failed to "call a code."  These allegations are too vague and conclusory to state a plausible Eighth Amendment claim because the Plaintiff merely alleges Defendant Andrews' presence in a booth and fails to identify the incidents that Andrews is alleged to have witnessed, or that Andrews was in a position to intervene and failed to do so.  Further, the Plaintiff's allegation that Defendant Andrews failed to call a code is insufficient to establish a § 1983 claim insofar it alleges solely an NCDPS

policy violation.  See Jackson v. Sampson, 536 F. App'x 356, 357 (4th Cir. 2013) (unpublished) (holding that "prison officials' failure to follow internal prison policies are not actionable under § 1983 unless the alleged breach of policy rises to the level of constitutional violation").

### C.    Deliberate Indifference

The Eighth Amendment encompasses a right to medical care for serious medical needs.  See Estelle v. Gamble, 429 U.S. 97, 103-04 (1976). To state a claim for deliberate indifference to a serious medical need, a plaintiff must show that he had serious medical needs and that the defendant acted with deliberate indifference to those needs.  Heyer v. United States Bureau of Prisons, 849 F.3d 202, 210 (4th Cir. 2017) (citing Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008)).  A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  Iko, 535 F.3d at 241 (internal quotation marks omitted). To constitute deliberate indifference to a serious medical need, "the treatment [a prisoner receives] must be so grossly incompetent, inadequate, or excessive to shock the conscience or to be intolerable to fundamental fairness."  Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990), *overruled on other grounds by* Farmer v. Brennan, 511 U.S. 825, 825 (1994).  However,

mere negligence or malpractice does not violate the Eighth Amendment. Miltier, 896 F.2d at 852. Further, "mere '[d]isagreements between an inmate and a physician over the inmate's proper medical care' are not actionable absent exceptional circumstances." Scinto v. Stansberry, 841 F.3d 219, 225 (4th Cir. 2016) (quoting Wright v. Collins, 766 F.2d 841, 840 (4th Cir. 1985)).

The Plaintiff's allegations that Defendants West and White refused to provide any medical treatment, including a decontamination shower to remove pepper spray, state plausible deliberate indifference claims against these Defendants, and such claims will be allowed to proceed.

### D. Due Process

The Plaintiff alleges he was sent to Polk C.I. for "H-CON" housing and that his stay in H-CON was extended without due process.

In order to establish a due process violation, "a plaintiff must first show that he has a constitutionally protected 'liberty' or 'property' interest, and that he has been 'deprived' of that protected interest by some form of 'state action.'" Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d 167, 172 (4th Cir. 1988) (citations omitted). If the plaintiff makes such showing, the court considers what process was required and whether any provided was adequate in the particular factual context. Id. In order to demonstrate the existence of a liberty interest, a plaintiff "must show a legitimate claim of

entitlement – that is, something more than an abstract need or desire…." Rockville Cars, LLC v. City of Rockville, Md., 891 F.3d 141, 146 (4th Cir. 2018) (citing Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972)).  To demonstrate a sufficient property interest, an inmate must have "an individual entitlement grounded in state law."  Logan v. Zimmerman Brush Co., 455 U.S. 422, 430 (1982).  If the inmate does not have such an interest, then the protections of the Due Process Clause do not apply.  See Prieto v. Clarke, 780 F.3d 245, 248 (4th Cir. 2015); Couch v. Clarke, 782 F. App'x 290, 292 (4th Cir. 2019).

The Plaintiff's allegations that Defendants Ingram, Lambert, and Tharrington sent him to H-CON without due process are sufficient to state plausible claims, and therefore such claims will be allowed to proceed.

However, the Plaintiff's claims that, once he was at Polk C.I., Defendants Cooper, Walker, Halkins, Dayes, and Tucker extended H-CON by 180 days without due process, are not based on actions that occurred while the Plaintiff was located in this District.  These circumstances pose a joinder issue because the Federal Rules of Civil Procedure allow joinder of defendants in a single action when "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences;

and … any question of law or fact common to all defendants will arise in the action."  Fed. R. Civ. P. 20(a)(2).  "The 'transaction or occurrence test' of [Rule 20] ... 'permit[s] all reasonably related claims for relief by or against different parties to be tried in a single proceeding. Absolute identity of all events is unnecessary.'"  <u>Saval v. BL Ltd.</u>, 710 F.2d 1027, 1031 (4th Cir. 1983) (quoting <u>Mosley v. Gen. Motors Corp.</u>, 497 F.2d 1330, 1333 (8th Cir. 1974)).  However, "Rule 20 does not authorize a plaintiff to add claims 'against different parties [that] present[ ] entirely different factual and legal issues.'"  <u>Sykes v. Bayer Pharm. Corp.</u>, 548 F. Supp. 2d 208, 218 (E.D. Va. 2008) (internal quotations omitted).  "And, a court may 'deny joinder if it determines that the addition of the party under Rule 20 will not foster the objectives of [promoting convenience and expediting the resolution of disputes], but will result in prejudice, expense, or delay.'"  <u>Id.</u> (quoting <u>Aleman v. Chugach Support Servs., Inc.</u>, 485 F.3d 206, 218 n.5 (4th Cir. 2007)).  This does not, however, provide a plaintiff free license to join multiple defendants into a single lawsuit where the claims against the defendants are unrelated.  <u>See, e.g.</u>, <u>George v. Smith</u>, 507 F.3d 605, 607 (7th Cir. 2007) (ruling that district court should not have allowed prisoner to bring unrelated suits against unrelated defendants); <u>Coughlin v. Rogers</u>, 130 F.3d 1348, 1350 (9th Cir. 1997).  Moreover, the Court is mindful that preventing unrelated claims

against unrelated defendants not only serves the requirements of Rule 20, but also furthers the goals of the Prison Litigation Reform Act ("PLRA"). See George, 507 F.3d at 607; accord Fannin v. Sellers, 2020 WL 6808771, at *3 (E.D. Va. Nov. 19, 2020); Coles v. McNeely, 2011 WL 3703117, at *3 (E.D. Va. Aug. 23, 2011) ("The Court's obligations under the PLRA include review for compliance with Rule 20(a)"), *aff'd* 465 F. App'x 246 (4th Cir. 2012).

The classification decisions relating to the Plaintiff at Polk C.I. did not occur in this District and do not constitute the same transaction or occurrence as those made at Lanesboro C.I. See Burns v. Wexford Health Servs., 2019 WL 5394180, at *3 (S.D. Ill. Oct. 22, 2019) (unpublished) ("discretionary actions taken by different officials at different prisons do not constitute the same series of transactions and occurrences with questions of fact common to each of the defendants.").

The appropriate remedy is to *sua sponte* dismiss the improper defendants and sever the unrelated claims. 28 U.S.C. § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."); see, e.g., Nunn v. N.C. Legis., 2015 WL 1713885, at *4 (E.D.N.C. Apr. 15, 2015) (on initial review, dismissing without prejudice a prisoner's claims that

occurred at prisons located in other districts), *aff'd*, 620 F. App'x 173 (4th Cir. 2015).

Therefore, the Plaintiff's due process claims will proceed against Defendants Ingram, Lambert, and Tharrington. However, the due process claims against Defendants Cooper, Walker, Halkins, Dayes, and Tucker are dismissed without prejudice to the Plaintiff asserting his claims in the appropriate District, subject to all procedural and timeliness requirements.[7]

### E. Property Deprivations

The Plaintiff alleges that a pair of shoes was taken and never returned to him and that property in his cell was destroyed.

Where a state employee's random, unauthorized act deprives an individual of property, either negligently or intentionally, the individual is relegated to his state post-deprivation process, so long as the State provides an adequate post-deprivation remedy. Hudson v. Palmer, 468 U.S. 517 (1984); Parratt v. Taylor, 451 U.S. 527 (1981), *overruled on other grounds by* Daniels v. Williams, 474 U.S. 327 (1986)). Under North Carolina law, an action for conversion will lie against a public official who wrongfully deprives an owner of his property by an unauthorized act. Gallimore v. Sink, 27

---

[7] The Court makes no determination regarding the merit or procedural viability of such an action.

N.C.App. 65, 67, 218 S.E.2d 181, 182 (1975). The Fourth Circuit has determined that North Carolina provides adequate post-deprivation remedies for prisoners. See Wilkins v. Whitaker, 714 F.2d 4, 6 (4th Cir. 1983) (due process satisfied where North Carolina tort law provides an adequate avenue for relief for state prisoner).

The Plaintiff asserts that Defendant White took a pair of shoes that was never returned and that Defendant Abernathy damaged property and documents in his cell. The Plaintiff appears to allege that these property losses resulted from random, unauthorized acts rather than an established state procedure. Adequate post-deprivation remedies exist for Plaintiff's alleged property loss, so there is no legal theory which would support a due process claim for the loss of these items. Accordingly, the Plaintiff's claims for the alleged loss of property are dismissed.

### F.    Conditions of Confinement

The Plaintiff appears to allege that the denial of recreation and the conditions in which he was left in his cell after the use of force incident were constitutionally infirm.

The Eighth Amendment protects prisoners from inhumane conditions of confinement. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). "Prison conditions may be harsh and uncomfortable without violating the

Eighth Amendment prohibition against cruel and unusual punishment." Dixon v. Godinez, 114 F.3d 640, 642 (7th Cir. 1997). Rather, extreme deprivations are required, and "only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Hudson v. McMillian, 503 U.S. 1, 9 (1992) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991) (internal quotation omitted)). Further, a plaintiff must allege and prove facts sufficient to support a claim that prison officials knew of and disregarded a substantial risk of serious harm. See Farmer, 511 U.S. at 847.

The Plaintiff's allegations that Defendants Abernathy and Collins left him on the floor in full restraints without providing a decontamination shower for several hours until he was found unresponsive state a plausible Eighth Amendment claim. However, his claim against "every officer on Anson Unit at the time of the incident" who witnessed and/or took part in the incident is too vague and conclusory to proceed. [Doc. 1 at 12]; see Section III(A), *supra*.

To the extent that the Plaintiff alleges that Defendant Mac denied him recreation on a single occasion is not adequately serious to implicate the Eight Amendment.

### F.    Legal Mail

The Plaintiff appears to allege that his legal mail was mishandled on a single occasion.

As a general matter, prisoners have the right to both send and receive mail.  See Thornburgh v. Abbott, 490 U.S. 401, 408 (1989); Pell v. Procunier, 417 U.S. 817 (1974).  "[L]egal mail is widely recognized to be privileged and confidential — even in the context of prisons — which suggests that an incarcerated person's expectation of privacy in his legal mail is one 'that society is prepared to consider reasonable.'"  Haze v. Harrison, 961 F.3d 654, 660 (4th Cir. 2020) (quoting United States v. Catellanos, 716 F.3d 828, 832 (4th Cir. 2013)); see King v. Rubenstein, 825 F.3d 206, 215 (4th Cir. 2016) ("nothing in Hudson[8] indicates the Supreme court intended to abrogate a prisoner's expectation of privacy *beyond* his cell.").  However, a prison rule requiring that legal mail be opened in the presence of the inmate, without being read, does not infringe on a prisoner's constitutional rights.  See Wolff v. McDonnell, 418 U.S. 539, 575–77 (1974); see also Turner v. Safley, 482 U.S. 78, 89 (1987) (prison restrictions impinging on an inmate's constitutional

---

[8] Hudson v. Palmer, 468 U.S. 517 (1984) (holding that an inmate has no reasonable expectation of privacy, and thus no Fourth Amendment protection, in his prison cell).

rights are valid if they are reasonably related to legitimate penological interests).

The Plaintiff appears to allege that Defendant Herring mishandled his legal mail by delivering a piece of legal mail from NCIC to him, already opened. This single instance of legal mail mishandling does not rise to the level of a constitutional violation. See Buie v. Jones, 717 F.2d 925, 926 (4th Cir. 1983) (stating that "a few isolated instances of plaintiff's mail being opened out of his presence" that were "either accidental or the result of unauthorized subordinate conduct ... were not of constitutional magnitude"); Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003) ("an isolated incident of mail tampering is usually insufficient to establish a constitutional violation."). Therefore, the claim against Defendant Herring for mishandling the Plaintiff's legal mail will be dismissed.

### G. Retaliation

Construing the allegations liberally, the Plaintiff appears to allege that he was sent to H-CON in retaliation for having communication with the North Carolina Industrial Commission.

The First Amendment right to free speech "includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right." Suarez Corp. v. McGraw, 202

F.3d 676, 685 (4th Cir. 2000). Prison officials may not retaliate against an inmate for exercising a constitutional right. See Hudspeth v. Figgins, 584 F.2d 1345, 1347 (4th Cir. 1978). In order to state a colorable retaliation claim under § 1983, a plaintiff must allege: "(1) [ ]he engaged in protected First Amendment activity, (2) the defendant[ ] took some action that adversely affected [his] First Amendment rights, and (3) there was a causal relationship between [his] protected activity and the defendant['s] conduct." Martin v. Duffy, 858 F.3d 239, 249 (4th Cir. 2017) (quoting Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 499 (4th Cir. 2005)). In the prison context, retaliation claims are treated with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct." Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994).

The Plaintiff's allegations in this regard are too vague and conclusory to state a plausible retaliation claim against any Defendant. The Plaintiff does not identify the Defendant(s) who allegedly retaliated against him and such cannot be gleaned from the Complaint. The Plaintiff alleges that Defendant Herring opened his NCIC legal mail, but does not allege that Herring was responsible for placing him in H-CON; and he does not allege that Defendants Ingram, Lambert, and Tharrington, who allegedly sent him

to H-CON, knew of the NCIC legal mail.  Therefore, the Plaintiff's retaliation claim will be dismissed.

### H.    Supplemental Jurisdiction

Finally, the Plaintiff appears to assert claims under North Carolina law.

Federal district courts may entertain claims not otherwise within their adjudicatory authority when those claims "are so related to claims ... within [federal-court competence] that they form part of the same case or controversy."  28 U.S.C. § 1367(a).  To exercise supplemental jurisdiction, a court must find that "[t]he state and federal claims ... derive from a common nucleus of operative fact" where a plaintiff "would ordinarily be expected to try them all in one judicial proceeding."  United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966).  When a district court dismisses all claims independently qualifying for the exercise of federal jurisdiction, it "ordinarily dismiss[es] all related state claims."  Artis v. Dist. Of Columbia, 138 S.Ct. 594, 595 (2018); see § 1367(c)(3).  A district court may also dismiss the related state claims if there is a good reason to decline jurisdiction.  See § 1367(c)(1), (2), and (4).

The Plaintiff asserts that the officers who allegedly used excessive force against him are liable for assault and battery under North Carolina law. See generally Dickens v. Puryear, 302 N.C. 437, 445, 276 S.E.2d 325, 330

(1981) (North Carolina assault is an offer to show violence to another without striking him, and battery is the carrying of the threat into effect by the infliction of a blow). These claims involve the same Defendants and incidents as the excessive force claims that have passed initial review. Therefore, the Court will exercise supplemental jurisdiction over the North Carolina assault and battery claims at this time.

## O R D E R

**IT IS, THEREFORE, ORDERED** that the claims asserted against NCDPS are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the excessive force claims against Defendants Blackwell, Carol, Collins, Jones, Mac, White, and John Does #1 and #2; medical deliberate indifference claims against Defendants West and White; claims of unconstitutional conditions of confinement against Defendants Abernathy and Collins; and due process violations against Defendants Ingram, Lambert, and Tharrington have passed initial review. The Court will exercise supplemental jurisdiction over the Plaintiff's North Carolina assault and battery claims against Defendants Blackwell, Carol, Collins, Jones, Mac, White, and John Does #1 and #2. The due process claims against Defendants Cooper, Walker, Halkins, Dayes, and Tucker are

**DISMISSED WITHOUT PREJUDICE** to the Plaintiff asserting his claims in the appropriate District, subject to all procedural and timeliness requirements. All other claims asserted in the Complaint are **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that the Plaintiff shall have **thirty (30) days** in which to amend his Complaint, if he so chooses, to correct the deficiencies identified in this Order and to otherwise properly state a claim upon which relief can be granted. Any Amended Complaint will be subject to all timeliness and procedural requirements and will supersede the Complaint. Piecemeal amendment will not be permitted. If Plaintiff fails to amend the Complaint in accordance with this Order and within the time limit set by the Court, Defendant Andrews will be dismissed from this case without further notice to Plaintiff.

The Clerk is instructed to mail Plaintiff a blank prisoner § 1983 complaint form.

**IT IS SO ORDERED.**

Signed: June 7, 2021

Martin Reidinger
Chief United States District Judge