IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL CASE NO. 3:20-cv-00565-MR

| | |
|---|---|
| ANTHONY L. HARRIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM OF** |
| vs. ) | **DECISION AND ORDER** |
| ) | |
| RAVEN DAWN MACK, et al., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on a Motion for Summary Judgment filed by Defendants Dewayne Harlan Andrews, George W. Baysden, Jr., Shatoya Blackwell, Jeremy Carroll, Sandra J. Collins, Kevin Edward Gazoo, Kevin J. Ingram, Stephen Jacobs, DeRay Kirby, Albert Keith Lambert, Raven Dawn Mack,[1] Kevin Messier, Mark C. Poplin, Allen Shane Tharrington, Larry Thomas Thompson, Dena L. West, and Kevin C. White [Doc. 64].[2] Also pending are the Plaintiff's pro se "Motion for Leave to Rule an Amend

---

[1] "Raven Dawn Mac" in the Amended Complaint. [Doc. 14: Am. Compl. at 2]. The Clerk will be instructed to correct the Defendant's name in the Court's record.

[2] Defendants Messier, Kirby, Gazoo, Poplin, Thompson, Jacobs, and Baysden are referred to in the Amended Complaint as John Does #2 through 8, respectively. Claims against Melissa Dee Abernathy, Phillip I. Bracco (John Doe #1), and Derrick Alexander Jones passed initial review, but these Defendants were subsequently dismissed from the action without prejudice for lack of service. [Doc. 40: Order].

Complaint" [Doc. 73], Motion for Extension of Page Limit [Doc. 74], and Motion to Strike[3] [Doc. 77].

**I.  BACKGROUND**

The incarcerated Plaintiff Anthony L. Harris, proceeding pro se, filed this action pursuant to 42 U.S.C. § 1983 and North Carolina law, addressing incidents that allegedly occurred while he was incarcerated at the Lanesboro Institution. [See Doc. 1: Complaint]. The Plaintiff's unverified Amended Complaint[4] passed initial review against various Defendants on claims of excessive force/sexual abuse, failure to intervene, deliberate indifference to a serious medical need, inhumane conditions of confinement, due process violations, and retaliation, and the Court exercised supplemental jurisdiction over the Plaintiff's North Carolina assault, battery, and negligence claims. [Doc. 10: Order on Initial Review of Am. Compl.]. The Plaintiff seeks a declaratory judgment, injunctive relief, compensatory and punitive damages, and any additional relief that the Court deems just, proper, and equitable. [Doc. 14: Am. Complaint at 5, 25].

---

[3] Titled "Plaintiff Strikes the Defendants Response in Opposition to Plaintiff Motion for Summary Judgment (Error)."

[4] The unverified Complaint had also passed initial review for the use of excessive force, deliberate indifference, unconstitutional conditions of confinement, due process violations against various Defendants, and the Court exercised supplemental jurisdiction over the Plaintiff's related assault and battery claims. [Doc. 12: Order on Initial Review of Compl.].

2

Case 3:20-cv-00565-MR    Document 78    Filed 09/20/23    Page 2 of 20

The Defendants filed the instant Motion for Summary Judgment and supporting materials.[5] [Doc. 64: MSJ]. Thereafter, the Court entered an Order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising the Plaintiff of the requirements for filing a response to the summary judgment motion and of the manner in which evidence could be submitted to the Court. [Doc. 72: Roseboro Order]. The Plaintiff responded and filed exhibits opposing summary judgment.[6] [Doc. 75: MSJ Response]. The Defendants construed the Plaintiff's Response as seeking summary judgment and filed a Response opposing such. [Doc. 76: MSJ Reply and Response]. The Plaintiff then moved to strike the Defendants' Response, explaining that Plaintiff did not file a Motion for Summary Judgment. [Doc.

---

[5] The Defendants have filed a Declaration of Edward Gazoo that purports to include Defendant Gazoo's "electronic verification" by email. [Doc. 65-11: MSJ Ex J at 4-5]. The Declaration is not properly verified and, therefore, it will not be considered. See 28 U.S.C. § 1746 (requiring a verification to include a signature); WDNC Administrative Procedures Governing Filing and Service by Electronic Means (rev. Nov. 1, 2019), § II.C.1 (a document requiring a non-attorney's signature, such as an affidavit, must be filed by scanning the original document in PDF format, then electronically filing it; allowing only the electronic signatures of attorneys).

[6] The Plaintiff's MSJ Response is unverified. The Plaintiff has attached to his Response multiple exhibits including copies of the Defendants' MSJ exhibits and discovery materials, some of which include Plaintiff's handwritten notes, the unverified statement that the Plaintiff gave during the prison's use of force investigation, and a verified statement by Inmate Joseph Short. [Doc. 75-2: MSJ Response Ex at 125]. The Plaintiff's exhibits and handwritten notes are not submitted under penalty of perjury, and thus, cannot create a genuine dispute of material fact to defeat summary judgment. See generally Orsi v. Kirkwood, 999 F.2d 86, 92 (4th Cir. 1993). Although Mr. Short's statement is verified, it will be disregarded because Mr. Short does not purport to have witnessed any of the events at issue in the instant case; his general observations and personal experiences regarding his own incarceration are irrelevant here.

77: Motion to Strike]. As the Plaintiff now explains that he is not seeking summary judgment, the Court will grant the Motion to Strike because the Defendant's Response is moot. The Defendants' Motion for Summary Judgment is ripe for disposition.

Also pending are the Plaintiff's Motion in which he seeks leave to correct the Complaint to substitute "Colin Adkins" for the Defendant identified as Dena West, and for leave to file excess pages in response to the Defendants' Motion for Summary Judgment. [Doc. 73: Motion to Amend; Doc. 74: Motion for Excess Pages]. The Plaintiff's Motion to file excess pages is granted, but his Motion to Amend is denied as moot, as the entire matter will be dismissed for the reasons discussed *infra*.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Namely, the nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. To that end, only evidence admissible at trial may be considered by the Court on summary judgment. Kennedy v. Joy Technologies, Inc., 269 F. App'x 302, 308 (4th Cir. 2008) (citation omitted).

5

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. Facts, however, "must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776 (2007). As the Supreme Court has emphasized,

> "[w]hen the moving party has carried its burden under Rule 56(c), the opponent must do more than simply show there is some metaphysical doubt as to the material facts …. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct. 1348 (1986) (footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-28, 106 S. Ct. 2505 (1986). When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

Scott, 550 U.S. at 380.

### III. FACTUAL BACKGROUND

The Defendants' uncontroverted forecast of evidence shows the following.

The Plaintiff is serving a 13-year sentence on a 2015 conviction for second-degree murder (principal) and assault on a state officer/employee (principal). [Doc. 65-2: MSJ Ex A (Offender Public Information)]. At the time of the incident at issue, the Plaintiff had incurred 43 disciplinary infractions for offenses including threatening to harm/injure staff, assaulting staff with a weapon, and assaulting a person with a weapon. [See Doc. 65-3: MSJ Ex. B].

On July 4, 2018 at approximately 7:20 a.m., Sergeant Mack overheard the Plaintiff using profanity and making threats against Correctional Officer Sandra Collins as Collins was taking the Plaintiff to outside recreation. [Doc. 65-4: Mack Decl. at ¶ 7]. Sergeant Mack then began to escort the Plaintiff back inside to his cell. [Id. at ¶ 8]. At the cell, the Plaintiff dropped to the floor, attempted to slip his restraints, began kicking Sergeant Mack, and attempted to strike her. [Id. at ¶ 8]. Sergeant Mack held the Plaintiff against the wall. While Sergeant Mack waited for assistance, the Plaintiff bit and chewed on Mack's fingers. [Id. at ¶ 9]. Additional staff arrived and helped Mack to free her hand; her injuries were severe and required outside medical treatment. [Id. at ¶¶ 9-10].

Staff, including Officers Messier and Carroll, responded to a Code 7 (staff assault) at the Plaintiff's cell. [Doc. 65-6: Messier Decl. at ¶ 7; see also

7

Doc. 65-5: MSJ Ex D at 1-2]. The Plaintiff was restrained, and Officer Messier escorted him to main medical to be evaluated by medical staff. [Doc. 65-6: Messier Decl. at ¶¶ 8-9]. The Plaintiff was subsequently released from medical, and Messier escorted him back to his cell. [Id. at ¶ 9].

The Plaintiff was referred to the Felony Classification Committee (FCC) for placement on High Security Maximum Control (HCON)[7] for 180 days "based on Plaintiff's assault on Sgt. Mack on July 4, 2018." [Doc. 65-12: Poplin Decl. at ¶ 9; Doc. 65-13: Kirby Decl. at ¶ 9]. The FCC met with the Plaintiff on July 25, 2018. [Doc. 65-12: Poplin Decl. at ¶ 9; Doc. 65-13: Kirby Decl. at ¶ 9]. Unit Manager Ingram's sole involvement was to escort the Plaintiff to the FCC meeting. [Doc. 65-14: Ingram Decl. at ¶ 9]. At the FCC meeting, it was noted that the Plaintiff had been placed in Restrictive Housing for Control Purposes in March 2018 due to another assault on staff. [Doc. 65-12: Poplin Decl. at ¶ 9; Doc. 65-13: Kirby Decl. at ¶ 9; see Doc. 65-12: Poplin Ex 4 (Offender Control Action)]. The Plaintiff made no comments during the meeting, and he had no questions for the FCC. [Doc. 65-12: Poplin Decl. at ¶ 10; Doc. 65-13: Kirby Decl. at ¶ 10]. The FCC ultimately approved

---

[7] HCON is the isolation of a close custody felon who poses, or continues to pose, an imminent threat to the life or health of other offenders or staff or poses a serious threat to the security and integrity of a prison facility. [Doc. 65-10: MSJ Ex I, NCDPS Policy & Procedures O.0600(a)]. An offender may be placed in an HCON status if he "has been found guilty of a major disciplinary infraction involving a staff assault resulting in physical injury…." [Id. at O.0600(a)(1)].

the Plaintiff's placement on HCON. [Id.]. The Division Classification Committee (DCC) in Raleigh reviewed the FCC's approval and agreed with the Plaintiff's placement on HCON. [Id.]. Manager of Classification, Shane Tharrington, also agreed with Plaintiff's placement on HCON. [Id.].

Contrary to Plaintiff's unverified allegations, at no time did Sergeant Mack "jack up" the Plaintiff; deny him recreation without a reason; tell the Plaintiff that she was going to "whoop his ass"; kick or punch him; spray his face and eyes with pepper spray; use derogatory language towards him; assault or batter him; or use excessive force on him. [Doc. 65-4: Mack Decl. at ¶¶ 12-18]. Sergeant Mack behaved professionally in accordance with NCDPS and Lanesboro CI policies and procedures at all times. [Id. at ¶ 18]. Plaintiff has presented no forecast of evidence to the contrary.

Contrary to Plaintiff's unverified allegations, at no time did Messier: watch another officer pull the Plaintiff's arm through the food trap in the cell door; intentionally and repetitiously step on the Plaintiff's foot restraints, causing them to cut into the Plaintiff's ankle; bend the Plaintiff over, bend the Plaintiff's finger, or grind his privates on the Plaintiff's butt while the Plaintiff screamed; tell a nurse not to treat the Plaintiff; leave the Plaintiff on the floor in full restraints until he was found unresponsive; use excessive force on the Plaintiff, or assault or batter him. [Doc. 65-6: Messier Decl. at ¶¶ 11-16].

9

Officer Messier acted professionally and according to policy and procedures at all times. [Id. at ¶ 16]. Plaintiff has presented no forecast of evidence to the contrary.

Contrary to Plaintiff's unverified allegations, at no time did Poplin, Kirby, or Ingram order the Plaintiff's demotion in retaliation for his assault on staff or his communication with the North Carolina Industrial Commission (NCIC), or demote the Plaintiff without due process. [Doc. 65-12: Poplin Decl. at ¶¶ 11-13; Doc. 65-13: Kirby Decl. at ¶¶ 11-13; Doc. 65-14: Ingram Decl. at ¶¶ 10-12]. At all times, Poplin, Kirby, and Ingram behaved professionally and acted according to NCDPS and Lanesboro policies and procedures [Doc. 65-12: Poplin Decl. at ¶ 14; Doc. 65-13: Kirby Decl. at ¶ 14; Doc. 65-14: Ingram Decl. at ¶ 13]. Plaintiff has presented no forecast of evidence to the contrary.

## IV.  DISCUSSION

### A.  Excessive Force & Sexual Abuse

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. CONST. amend. VIII, and protects prisoners from the "unnecessary and wanton infliction of pain." Whitley v. Albers, 475 U.S. 312, 319 (1986). The Eighth Amendment also protects inmates from sexual abuse. Schwenk v. Hartford, 204 F.3d 1187, 1196-97 (9th Cir. 2000);

10

Case 3:20-cv-00565-MR   Document 78   Filed 09/20/23   Page 10 of 20

Jackson v. Holley, 666 F. App'x 242, 244 (4th Cir. 2016) ("There can be little doubt that sexual abuse is repugnant to contemporary standards of decency, and that allegations of sexual abuse can amount to an Eighth Amendment violation."). To establish an Eighth Amendment claim, an inmate must satisfy both an objective component–that the harm inflicted was sufficiently serious– and a subjective component–that the prison official acted with a sufficiently culpable state of mind. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). The Fourth Circuit recognizes a cause of action for bystander liability "premised on a law officer's duty to uphold the law and protect the public from illegal acts, regardless of who commits them." Stevenson v. City of Seat Pleasant, Md., 743 F.3d 411, 416-17 (4th Cir. 2014) (quoting Randall v. Prince George's Cnty., Md., 302 F.3d 188, 203 (4th Cir. 2002)).

The Plaintiff alleges that Defendants Collins, Carol, Messier, Mack, and White used excessive force against him and/or sexually assaulted him, and that Defendants Blackwell, Carroll, Collins, and Messier failed to intervene to prevent those violations of his rights. [See Doc. 14: Am. Compl. at 17-18, 20-23]. However, he has not forecast any evidence in support of these claims.

The Defendants have forecast evidence that Defendant Mack returned the Plaintiff to his cell after the Plaintiff threatened staff; that the Plaintiff

11

committed an unprovoked attack by biting Mack, severely injuring her; that staff responded to a Code 7 call, helped extricate Mack's hand from his mouth, pepper sprayed the Plaintiff, and assisted in restraining him; and that the Plaintiff received a split, swollen lip and contusions in the incident. Because there is no forecast of evidence that any Defendant used unreasonable force against the Plaintiff, committed a sexual act against him, or failed to intervene to prevent a violation of his rights, the Court will grant the Defendants' Motion for Summary Judgment on these claims.

### B. Deliberate Indifference to a Serious Medical Need

Claims under 42 U.S.C. § 1983 based on an alleged lack of or inappropriate medical treatment fall within the Eighth Amendment's prohibition against cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To state a claim for deliberate indifference to a serious medical need, a plaintiff must show that he had serious medical needs and that the defendant acted with deliberate indifference to those needs. Heyer v. United States Bureau of Prisons, 849 F.3d 202, 210 (4th Cir. 2017) (citing Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008)).

The Plaintiff alleges that Defendants Messier, West and White refused to provide him with a decontamination shower to remove pepper spray, or

12

any other medical assistance. [Doc. 14: Am. Compl. at 21-22]. However, he has not forecast any evidence in support of these claims.

The Defendants have forecast evidence that the Plaintiff was taken to main medical for screening after the incident; that medical cleared him for decontamination and the return to his housing unit; and that the Plaintiff was escorted back to his cell. [Doc. 65-6: Messier Decl. at ¶¶ 8-9]. There is no forecast of evidence that the Plaintiff had a serious medical need or that any Defendant was deliberately indifferent to such. Even if Plaintiff was not immediately provided a decontamination shower, this standing alone is insufficient to demonstrate the existence of a genuine dispute of material with regard to any Defendant's deliberate indifference. See Moskos v. Hardee, 24 F.4th 289, 298 (4th Cir. 2022) (holding that a short delay in decontamination does not satisfy the deliberate indifference standard's objective prong, absent any aggravating factors such as a serious medical reaction). The Defendants' Motion for Summary Judgment is granted on this claim.

### C. Conditions of Confinement

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Williams, 77 F.3d at 761. "Prison conditions may be harsh and uncomfortable without

13
Case 3:20-cv-00565-MR   Document 78   Filed 09/20/23   Page 13 of 20

violating the Eighth Amendment prohibition against cruel and unusual punishment." Dixon v. Godinez, 114 F.3d 640, 642 (7th Cir. 1997). Extreme deprivations are required. Hudson v. McMillian, 503 U.S. 1, 9 (1992). An inmate must satisfy both an objective component—that the harm inflicted was sufficiently serious—and subjective component—that the prison official acted with a sufficiently culpable state of mind. Williams, 77 F.3d at 761. A plaintiff must also allege "a serious or significant physical or emotional injury resulting from the challenged conditions." Strickler v. Waters, 989 F.2d 1375, 1381 (4th Cir. 1993).

Here, the Plaintiff alleges that Defendants Andrews, Collins, Messier, and White left him on the floor in full restraints for six hours until he was found unresponsive, and that Defendant Andrews was aware of the Plaintiff's "distressed condition" yet failed to aid him. [Doc. 14: Am. Compl. at 18-19]. However, he has not forecast any evidence in support of these claims.

The Defendants have forecast evidence that Defendant Messier did not leave the Plaintiff on the floor in full restraints until he was found unresponsive. [Doc. 65-6: Messier Decl. at ¶¶ 11-16]. Because there is no forecast of evidence that any Defendant knowingly subjected the Plaintiff to conditions of confinement that were objectively sufficiently serious, the Defendants' Motion for Summary Judgment is granted on this claim.

### D. Due Process

To prevail on a procedural due process claim, an inmate must first demonstrate that he was deprived of "life, liberty, or property" by governmental action. Bevrati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997). Although prisoners are afforded some due process rights while incarcerated, those liberty interests are limited to "the freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995).

The Plaintiff alleges that Defendants Baysden, Gazoo, Ingram, Jacobs, Kirby, Lambert, Poplin, Tharrington, and Thompson transferred him to a highly restrictive prison without due process. [Doc. 14: Am. Compl. at 18-19, 23-24]. However, he has not forecast any evidence in support of this claim.

The Defendants have forecast evidence that the Plaintiff was not demoted without due process. [Doc. 65-12: Poplin Decl. at ¶ 13; Doc. 65-13: Kirby Decl. at ¶ 13; Doc. 65-14: Ingram Decl. at ¶ 12]. He received a referral to the FCC, a meeting with the FCC, review by the DCC, and approval by Defendant Tharrington before he was demoted to HCON status.

[Doc. 65-12: Poplin Decl. at ¶¶ 9-10; Doc. 65-13: Kirby Decl. at ¶¶ 9-10]. Because there is no forecast of evidence that any Defendant deprived the Plaintiff of due process, the Defendants' Motion for Summary Judgment is granted on this claim.

### E. Retaliation

An inmate has a clearly established First Amendment right to be free from retaliation for filing lawsuits. See Booker v. S.C. Dep't of Corrs., 855 F.3d 533, 540 (4th Cir. 2017); Thompson v. Commonwealth of Va., 878 F.3d 89, 110 (4th Cir. 2017). To state a colorable First Amendment retaliation claim, a plaintiff must allege that (1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct. Martin v. Duffy, 977 F.3d 294, 299 (4th Cir. 2020) (quotation marks and citation omitted). Retaliation claims brought by prisoners, however, are treated with skepticism because every act of discipline by a prison official is retaliatory in that it responds directly to prisoner misconduct. See Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994).

The Plaintiff alleges that Defendants Baysden, Gazoo, Ingram, Jacobs, Kirby, Lambert, Poplin, Tharrington, and Thompson transferred him in

16

retaliation for his assault on staff and for having communicated with the NCIC. [Doc. 14: Am. Compl. at 23-24]. However, he has not forecast any evidence in support of this claim.

The Defendants have forecast evidence that the Plaintiff was demoted because his assault on Sergeant Mack qualified him for HCON status pursuant to applicable policies and procedures. Transferring an inmate to a more restrictive level of confinement due to the inmate having committed an assault is founded upon a basic penalogical interest and does not constitute retaliation. Plaintiff has presented nothing to show that his referral to HCON was in retaliation for his communication with the NCIC. [Doc. 65-12: Poplin Decl. at ¶¶ 11-12; Doc. 65-13: Kirby Decl. at ¶¶ 11-12; Doc. 65-14: Ingram Decl. at ¶¶ 10-11]. Because there is no forecast of evidence that any Defendant retaliated against the Plaintiff, the Defendants' Motion for Summary Judgment is granted on this claim.

### F. Qualified Immunity

Because a reasonable juror could not find that any Defendant violated any of the Plaintiff's constitutional rights in the first place, the Defendants are also entitled to qualified immunity with respect to the Plaintiff's individual capacity claims under 42 U.S.C. § 1983. See Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (*en banc*) ("Qualified immunity protects officers who

commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful."); see also E.W. ex rel. T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir. 2018) ("To determine whether an officer is entitled to qualified immunity, the court must examine (1) whether the plaintiff has demonstrated that the officer violated a constitutional right and (2) 'whether that right was clearly established at the time of the alleged violation.' "). Further, because a reasonable juror could not find that any Defendant violated a constitutional right, the Court does not reach the Defendants' arguments that they are entitled to sovereign immunity with respect to the Plaintiff's official capacity claims under 42 U.S.C. § 1983, or that the Plaintiff is not entitled to punitive damages.

### G. Supplemental Jurisdiction

On initial review, the Court exercised supplemental jurisdiction over the Plaintiff's North Carolina assault and battery and negligence claims that were based on the same incidents as § 1983 claims that had passed initial review. [See Doc. 15: Order on Initial Review of Am. Compl. at 7-8].

However, the Plaintiff has failed to forecast any evidence whatsoever in support of his North Carolina assault, battery, and negligence claims. As discussed *supra*, the related § 1983 claims have been dismissed. The Plaintiff's North Carolina claims based on the same conduct likewise fail.

See, e.g., Njang v. Montgomery Cnty., Maryland, 279 F. App'x 209, 216 (4th Cir. 2008) (recognizing that "the jurisprudence governing Fourth Amendment excessive force actions also controls a party's actions for battery and gross negligence"); Wilcoxson v. Painter, 2016 WL 866327, at *10 (E.D.N.C. March 3, 2016) ("[w]here a law enforcement officer's use of force was reasonable for the purposes of finding qualified immunity to a § 1983 excessive force claim, it is fatal to the Plaintiff's state law tort claims."). Accordingly, the Defendants' Motion for Summary Judgment on the Plaintiff's North Carolina assault, battery, and negligence claims is granted.

## IV. CONCLUSION

For the reasons stated herein, the Court grants Defendants' Motion for Summary Judgment, denies as moot the Plaintiff's "Motion for Leave to Rule an Amend Complaint," and grants the Plaintiff's Motion for Extension of Page Limit and Motion to Strike. This action is dismissed with prejudice.

## ORDER

**IT IS, THEREFORE, ORDERED** that:

1. Defendants' Motion for Summary Judgment [Doc. 64] is **GRANTED**, and this action is **DISMISSED WITH PREJUDICE**;

2. The Plaintiff's "Motion for Leave to Rule an Amended Complaint" [Doc. 73] is **DENIED AS MOOT**;

3. The Plaintiff's Motion for Extension of Page Limit [Doc. 74] is **GRANTED**; and

4. The Plaintiff's Motion to Strike [Doc. 77] is **GRANTED**, and the Defendants' Response in Opposition to Plaintiff's Motion for Summary Judgment [Doc. 76] is **STRICKEN**.

The Clerk is respectfully directed to correct the Defendant's name by substituting Raven Dawn Mack for "Raven Dawn Mac," to mail a copy of this Order to the Plaintiff, and to terminate this action.

**IT IS SO ORDERED.**

Signed: September 19, 2023

Martin Reidinger
Chief United States District Judge